UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| OPPENHEIMER & CO. INC., Plaintiff, | : | Case No: |
| -against- | : | |
| LOCAL BOUNTI CORPORATION, Defendant. | : | **COMPLAINT** |

Plaintiff Oppenheimer & Co. Inc. ("Plaintiff" or "Oppenheimer"), by its attorneys, Duane Morris LLP, as and for its Complaint against Defendant Local Bounti Corporation ("Defendant" or "Local Bounti"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action to recover in excess of $9,000,000 in fees and expenses due to Oppenheimer by Local Bounti in connection with investment banking advice and services provided by Oppenheimer at Local Bounti's request and which resulted in Local Bounti: (i) closing on $25,000,000 in new equity proceeds; (ii) closing on $2,500,000 of capex financing; and (iii) restructuring of its existing credit facility. Pursuant to the parties' written agreement, upon the closing of the placement of Local Bounti's securities, Oppenheimer was entitled to be paid a fee for its services in the amount of: (i) 2.0% of the aggregate gross proceeds of any indebtedness issued secured by a first lien; (ii) 4.0% of the aggregate gross proceeds of any indebtedness issued secured by a second or more junior lien, is unsecured, or is subordinated; (iii) 6.0% of the aggregate gross proceeds of any convertible debt, convertible or non-convertible preferred securities, warrants, or any equity-linked security; and (iv) 1.5% of certain modified or

restructured debt; plus reimbursement of Oppenheimer's expenses. Despite Oppenheimer's full performance of its obligations, Local Bounti has breached the agreement by failing to pay any of the fees or the expenses to which Oppenheimer is contractually entitled. As set forth below, Local Bounti's breach of the parties' agreement entitles Oppenheimer to recover the sum of $9,185,520.91, together with interest, as well as its costs and legal fees associated with this action.

**PARTIES**

2. Plaintiff Oppenheimer & Co. Inc. is a corporation organized and existing pursuant to the laws of the State of New York, which maintains its principal place of business at 85 Broad Street, 25th Floor, New York, New York 10004.

3. Upon information and belief, Defendant Local Bounti Corporation is a corporation organized and existing pursuant to the laws of the State of Delaware and maintains its principal place of business at 490 Foley Lane, Hamilton, Montana 59840.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this matter involves a dispute between a corporation organized pursuant to laws of the State of New York, with its principal place of business located within the State of New York, and a corporation organized pursuant to the laws of the State of Delaware, with its principal place of business located within the State of Montana, and the amount in controversy is in excess of $75,000.

5. This Court has jurisdiction over this matter pursuant to the terms of the parties' written agreement in which the parties irrevocably submitted to the jurisdiction of the United States District Court for the Southern District of New York.

6. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Southern District of New York.

7. Venue is appropriate in this District pursuant to the terms of the parties' written agreement in which the parties irrevocably submitted to the jurisdiction of the United States District Court for the Southern District of New York.

## BACKGROUND

### The Agreement

8. Among other services, Oppenheimer is an investment bank that provides emerging growth and mid-sized businesses with strategic advisory services and capital market strategies and investment banking advice and services.

9. Upon information and belief, Local Bounti is engaged in the business of providing agricultural products and services.

10. In or about June of 2023, Local Bounti approached Oppenheimer and requested that Oppenheimer provide investment banking services and advice to Local Bounti with regard to acting as the sole placement agent for the proposed private placement of Local Bounti's securities.

11. On June 29, 2023, the parties entered into a written agreement regarding, among other things, the investment banking services to be provided by Oppenheimer, as well as the fees and reimbursements to which Oppenheimer would be entitled to in exchange for its investment banking services (the "Agreement"). The Agreement was executed by Local Bounti's Chief Financial Officer, Kathleen Valiasek. A true and correct copy of the Agreement is annexed

hereto as Exhibit A.

12. The Agreement provides:

> [Local Bounti] has engaged [Oppenheimer] to serve as sole placement agent for the proposed private placement (the "Placement") of [Local Bounti's] securities, which may include senior loans, senior bonds or other senior debt instruments, subordinated debt instruments including, but not limited to, loans or bonds, convertible or non-convertible debt securities, and convertible or non-convertible preferred stock, and potentially warrants or other equity-linked securities (collectively, the "Securities"), of [Local Bounti] to a limited number of sophisticated investors (the "Investors").

Agreement, Exhibit A annexed hereto at p.1.

13. In exchange for the services outlined above, the Agreement provides:

> The cash fee (the "Fee") for a closed Placement will be dependent upon the amount of gross proceeds raised. [Local Bounti] will pay the Fee to Oppenheimer in cash upon the consummation of the Placement if, during the term (the "Term") of this Agreement or within six (6) months thereafter, [Local Bounti] consummates a Placement or enters into an agreement and subsequently consummates a Placement, calculated as follows:
>
> (i.) 2.0% of the aggregate proceeds of any indebtedness issued that is secured by a first lien;
>
> (ii.) 4.0% of the aggregate gross proceeds of any indebtedness issued that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;
>
> (iii.) 6.0% of the aggregate gross proceeds of any convertible debt, convertible or non-convertible preferred securities, warrants, or any equity-linked security; and
>
> (iv.) with respect to any other securities or indebtedness issued, such underwriting discounts, placement fees or other compensation shall be customary under the circumstances and mutually agreed in good faith by [Local Bounti] and Oppenheimer.
>
> Notwithstanding anything to the contrary herein, in the event Cargill Financial Services, Inc. or any of its affiliates (collectively "Cargill Financial") modifies or amends its existing debt facility agreement

> with [Local Bounti] such that the modification or amendment results in improved commercial terms for [Local Bounti], or Cargill Financial provides loan proceeds that are secured by a first lien claim on [Local Bounti's] assets, the Fees payable on the outstanding principal amount or gross proceeds as the case may be, modified, amended or issued shall be equal to 1.5%.

*Id.* at § 2.

14. The Agreement further provides:

> Regardless of whether [Local Bounti] consummates the Placement, [Local Bounti] agrees to pay, or reimburse if paid by Oppenheimer: (i)all of [Local Bounti's] own costs and expenses incident to the Placement and (ii) all of Oppenheimer's out-of-pocket costs and expenses reasonably incurred by Oppenheimer in connection with its engagement hereunder (including, without limitation, the reasonable and documented fees and expenses of Oppenheimer's outside attorneys); <u>provided</u>, that except as otherwise provided in Annex A and excluding non-legal expenses related to Blue-Sky and FINRA filings, such costs and expenses shall not exceed $25,000 with [Local Bounti's] prior written approval (including via email), such approval not to be unreasonably withheld, conditioned or delayed.

*Id.* at § 5.

15. In the event of a dispute arising out of the Agreement, the Agreement provides that the parties irrevocably submit to the exclusive jurisdiction of the courts of the State of New York located within New York County and the United States District Court for the Southern District of New York. *Id.* at § 8.

16. The Agreement expressly entitles Oppenheimer to recover its costs associated with any breach by Local Bounti of the Agreement, including, but not limited to, reasonable attorneys' fees. *Id.* at Annex A. The Agreement further makes clear that Oppenheimer's entitlement to recover its costs and attorneys' fees in the event of a breach of the Agreement by Local Bounti survives the termination of the Agreement. *Id.* at § 9; Annex A ("The provisions of this Annex will survive the modification, expiration or termination of this Agreement.").

17. During the time period of approximately July 2023 through March of 2025, Oppenheimer fully complied with its obligations under the Agreement and provided extensive services to Local Bounti pursuant to the Agreement.

18. On March 31, 2025, as a direct result of Oppenheimer's investment banking services, Local Bounti announced in a press release that it had: (i) closed on $25,000,000 of new equity proceeds; (ii) closed on $2,500,000 of capex financing under an executed term sheet; and (iii) completed the restructuring of its existing credit facility with Cargill Financial, including a nearly 40% reduction through debt extinguishment of approximately $197,000,000, a significantly lower interest rate, and extended repayment terms. A copy of the press release is annexed hereto as Exhibit B.

19. The new equity and capex financing which Local Bounti closed, as well as the Cargill Financial debt restructuring and modification, qualify as a Placement under the terms of the Agreement and entitle Oppenheimer to payment of the fees and disbursements provided for within the Agreement.

**<u>Local Bounti's Breach of the Agreement</u>**

20. Pursuant to the terms of the Agreement, Local Bounti was required to pay Oppenheimer the contractually provided Fee associated with the Placement and Cargill Financial debt restructuring/modification, as well as reimbursement toOppenheimer for its expenses, upon the consummation of the Placement (*i.e.* no later than March 31, 2025). The Fee to which Oppenheimer is entitled under the express terms of the Agreement amounts to $9,185,000, comprised of: (i) fees of $1,500,000 and $50,000 associated with new funding; and (ii) a $7,635,000 Fee associated with the Cargill Financial debt restructuring/modification. Inclusive of $520.91 in expenses incurred by Oppenheimer with regard to the Placement, the total due an

owing to Oppenheimer by Local Bounti upon closing of the Placement was $9,185,520.91.

21. Notwithstanding the closing of the Placement, Local Bounti failed to pay any portion of the Fee due and owing to Oppenheimer.

22. On September 22, 2025, Oppenheimer sent a letter to Local Bounti advising that Local Bounti was in default of the Agreement and demanding that Local Bounti immediately pay the $9,185,520.91 due under the Agreement. The letter also advised Local Bounti that, per the terms of the Agreement, Oppenheimer is entitled to recover its costs associated with any legal proceeding seeking to enforce the terms of the Agreement, including reasonable attorneys' fees. A copy of the September 22, 2025 letter is annexed hereto as Exhibit C.

23. Local Bounti failed to make the payment demanded by Oppenheimer within its September 22, 2025 letter.

24. As of the date of this Complaint, Local Bounti has not paid any portion of the Fee that Oppenheimer is entitled to, nor has it reimbursed Oppenheimer for any of its reasonable out-of-pocket expenses associated with the Placement and as provided for within the Agreement.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Contract)

25. Oppenheimer repeats and realleges each and every allegation set forth within Paragraphs 1 through 24 of this Complaint as if set forth in full herein.

26. Oppenheimer and Local Bounti entered into an Agreement under which Oppenheimer provided certain investment banking advice and services to Local Bounti at Local Bounti's request.

27. The Agreement constitutes a valid and enforceable contract.

28. Oppenheimer has performed each and every one of its obligations pursuant to the

Agreement.

29. Local Bounti has materially breached the Agreement by, among other things, failing to pay Oppenheimer the fees provided within the Agreement as compensation for Oppenheimer's services, as well as failing to reimburse Oppenheimer for its reasonable out-of-pocket expenses as provided for within the Agreement.

30. Oppenheimer has been damaged as a result of Local Bounti's material breach of the Agreement in an amount to be determined at trial, but in no event less than $9,185,520.91, together with interest, costs and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Quantum Meruit)**

31. Oppenheimer repeats and realleges each and every allegation set forth within Paragraphs 1 through 30 of this Complaint as if set forth in full herein.

32. The provision of Oppenheimer's investment banking advice and services to Local Bounti was at the express request of Local Bounti.

33. Local Bounti accepted Oppenheimer's investment banking advice and services without objection.

34. At all times, Oppenheimer reasonably believed that it would be compensated for its investment banking advice and services.

35. The reasonable and agreed value of the unpaid fee associated with Oppenheimer's investment advice and services related to the Placement is no less than $9,185,520.91, together with interest, costs and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Oppenheimer requests that this Court enter Judgment in favor of Oppenheimer and against Local Bounti as follows:

(i) On Plaintiff's First Cause of Action in an amount to be determined at trial, but in no event less than $9,185,520.91, together with interest from March 31, 2025;

(ii) On Plaintiff's Second Cause of Action in an amount to be determined at trial, but in no event less than $9,185,520.91, together with interest from March 31, 2025;

(iii) Awarding Oppenheimer recovery of its costs associated with this action, including, but not limited to reasonable attorneys' fees; and

(iv) Awarding Oppenheimer such further relief as this Court deems just and proper.

(v) Awarding Oppenheimer pre-judgment interest pursuant to CPLR § 5001 and post-judgment interest pursuant to 28 U.S.C. § 1961.

Dated: New York, New York
October 15, 2025

DUANE MORRIS LLP



By: Michael H. Gibson
Walter A. Saurack
Nelson Stewart
22 Vanderbilt
325 Madison Avenue, 23rd Floor
New York, New York 10017
(212) 818-9200
mhgibson@duanemorris.com
wasaurack@duanemorris.com
nmstewart@duanemorris.com
*Attorneys for Plaintiff*
*Oppenheimer & Co. Inc.*